UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA

_____   )
                                 )
**DAVID W. OSTER, et al.**       )
                                 )   Civil Action No. 02-0539 (RWR)
         **Plaintiffs,**         )
                                 )
         v.                      )
                                 )
**THE REPUBLIC OF SOUTH AFRICA,** )
                                 )
         **Defendant.**          )
_____   )

### MEMORANDUM OPINION

Count I plaintiffs[1] brought this action against the defendant, the Republic of South Africa, seeking to enforce a judgment from a prior action.  Count II plaintiffs[2] brought this action alleging that South Africa is liable for securities fraud, breach of fiduciary duty, breach of contract, and conversion based on the actions of its agents Adriaan Stander and Roelof Van Rooyen, principal managing officers of Intercol Party, Ltd. ("Intercol") and Oceantec Syndicate ("Oceantec").  South Africa moves to dismiss the plaintiffs' complaint, arguing that the court lacks subject matter jurisdiction.  Because there is no

---

[1]  Steven A. Curtis, David Lee Maudlin, and David W. Oster.

[2]  Trust Group Financial, Joseph W. Carmen, and Loren St. Ives.

subject matter jurisdiction over plaintiffs' claims, South Africa's motion to dismiss will be granted.[3]

### BACKGROUND

In an effort to investigate money due them based upon a series of collateral trading transactions, Count I plaintiffs met with Douglas Logan, a director of Intercol, a South African company that claimed to be "in the business of intelligence gathering, security services, political analysis, and high-risk investigative services, including high-tech electronic information services."  (Compl. at ¶ 36.)  Logan introduced plaintiffs to Stander and Van Rooyen, the principal managing officers of Intercol and Oceantec.  (Id. at ¶ 37.)  Stander and Van Rooyen told plaintiffs that they could help investigate the financial transactions.

Thereafter, plaintiffs were in continuous contact with Stander and Van Rooyen and paid them large sums of money to conduct the investigation.  Stander and Van Rooyen represented to plaintiffs that they had retrieved plaintiffs' funds from the trading transactions and would be disbursing those funds to

---

[3]   South Africa also moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), for insufficiency of service of process under Rule 12(b)(5), and for failure to state a claim upon which relief may be granted under Rule 12(b)(6).  In the alternative, South Africa moves for summary judgment under Rule 56, asserting that plaintiffs' claims are statutorily time-barred.  However, because the court lacks subject matter jurisdiction over plaintiffs' claims, these grounds for dismissal will not be fully addressed.

plaintiffs.  Plaintiffs claim that despite repeated assurances by Stander and Van Rooyen, they were never paid any of the funds allegedly owed to them.  (Id. at ¶ 44.)

Count I plaintiffs brought suit against Stander, Van Rooyen, Oceantec and Intercol in New York claiming securities fraud, breach of fiduciary duty, and breach of contract.  (Id., Ex. 2 at 1-2.)  Plaintiffs were awarded actual and punitive damages in a default judgment issued in 1995.  (Id. at ¶ 9, Ex. 2 at 13-14.)  Plaintiffs now seek to have the 1995 default judgment against the individual and corporate defendants enforced against South Africa.  They argue that Stander and Van Rooyen and their corporations acted as agents and front companies for South Africa during the relevant periods and therefore represented the sovereign in the lawsuit.

Count II plaintiffs claim that Stander held himself out to be a former officer of the South African Security Police at the time of their dealings.  (Id. at ¶ 40.)  Plaintiffs allege that new information has been discovered proving that both Stander and Van Rooyen were "contract employees" of the National Intelligence Agency of the Republic of South Africa ("NIA").  (Id.)  Plaintiffs also assert that an investigation by South African Police uncovered evidence in Stander's possession showing that large amounts of money were transferred from accounts in the United States to accounts in South Africa and that funds were

deposited in an account in Van Rooyen's name at Citibank in New York.  (Id.)  Plaintiffs claim that this evidence corroborates the agency relationship alleged in the complaint.  Plaintiffs assert that at all times Stander and Van Rooyen were working for South Africa as members of the NIA and that Oceantec and Intercol were front companies designed to facilitate the numerous covert operations of Stander and Van Rooyen.  (Id. at ¶¶ 48-49.)  Plaintiffs claim that the money transfers were carried out at the behest of South Africa in order to bypass apartheid-era sanctions and argue that South Africa should be held liable for the injuries caused by its agents, Van Rooyen and Stander and their corporate affiliates.  (Id. at ¶¶ 53-54.)

Plaintiffs offer several items as proof of their allegations of South Africa's involvement.  Specifically, plaintiffs cite the report of U.S. Magistrate Judge James Francis in the 1995 New York lawsuit, Curtis v. Stander, Civ. No. 96-31 (S.D.N.Y. 1995) ("the Report"), Stander's answer to the complaint in the 1995 lawsuit ("Stander's Answer"), the deposition and affidavit of Peter Goslar ("Goslar deposition"), and Stander's "Request for Release" filed in the Republic of South Africa under the "Law of Safeguarding" in 1994.

Count II plaintiffs allege that Stander, Van Rooyen, Intercol and Oceantec committed securities fraud, breached their fiduciary duty and breached a contract acting as agents of the

defendant.  Count II plaintiffs also claim that Stander, Van Rooyen and their corporate affiliates converted funds owed to plaintiffs as commissions from the alleged transaction.

South Africa moves to dismiss the claims of the Count I and Count II plaintiffs under Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacks subject matter jurisdiction.[4]

---

[4] South Africa contends that even if subject matter jurisdiction does exist, the Count I plaintiffs' action to against South Africa to enforce the 1995 judgment against Stander, Van Rooyen, Oceantec and Intercol must be dismissed under Rule 12(b)(6) for failure to state a claim against South Africa.  Plaintiffs claim that South Africa was virtually represented in the previous litigation and controlled the defense.  (See Compl. ¶ 15.)

"[O]ne is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Hansberry v. Lee, 311 U.S. 32, 40 (1940) (citing Pennoyer v. Neff, 95 U.S. 714 (1877)).  "This rule is part of our deep-rooted historic tradition that everyone should have his own day in court." Martin v. Wilks, 490 U.S. 755, 762 (1989) (internal quotation marks omitted).  "A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." Id.

Because "[p]ersons who are not parties to an action ordinarily are not bound by the judgment in the action," "[t]he doctrine of virtual representation has a highly uncertain scope." Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405, 1409, 1411 n.8 (D.C. Cir. 1985); see Sullivan v. Potter, et al., Civil Action No. 05-00818 (HHK), 2006 WL 785289, at *4 (D.D.C. Mar. 28, 2006) ("[T]he viability of the virtual representation doctrine is far from certain." (internal quotation marks omitted)).  "Virtual representation 'should be applied on a case-by-case basis using a fact-specific inquiry.'" Taylor v. Blakely, et al., Civil Action No. 03-0173 (RMU), 2005 U.S. Dist. LEXIS 40594, at *15 (D.D.C. May 12, 2005) (quoting Am. Forest Council v. Shea, 172 F. Supp. 2d 24, 31 (D.D.C. 2001)), aff'd, 490 F.3d 965 (D.C. Cir. 2007).  As this Circuit recently held, under its "test for virtual representation[,]" "adequate

- 6 -

## DISCUSSION

"Before a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims." Osseiran v. International Finance Corp., 498 F. Supp. 2d 139, 143 (D.D.C. 2007) (quotations and citation omitted). "A court must dismiss a claim if it does not possess subject matter jurisdiction to hear and decide the dispute due to a defendant's immunity from suit." Id. Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. See Forrester v. United States Parole Comm'n, 310 F. Supp. 2d 162, 167 (D.D.C. 2004)

---

representation [is a] necessary condition[]." Taylor v. Blakey, 490 F.3d 965, 971 (D.C. Cir. 2007).
    South Africa was not a party to the 1995 lawsuit, nor have plaintiffs pled facts that demonstrate that South Africa had any control over the defense. Plaintiffs did not attempt service on South Africa, and South Africa did not make an appearance in the 1995 litigation. Count I plaintiffs' arguments that the sovereign was virtually represented by the original defendants or that it controlled the litigation for the original defendants are unsubstantiated. In fact, it may be that no defendant in the 1995 lawsuit was actually represented. Other than Stander, none of the other defendants made an appearance in the litigation. According to South Africa, Stander's answer was filed by a South African attorney who did not have authority to do so (see Def.'s Reply at 32), which may explain why default judgment was entered notwithstanding the answer. Thus, the Count I plaintiffs do not appear to have sufficiently pled that South Africa was represented, let alone "adequately represented," as is required in this Circuit under Taylor. Whether or not this is enough for South Africa to succeed on its motion to dismiss the Count I plaintiffs' claim under 12(b)(6) will not be decided, though, since the court lacks subject matter jurisdiction over the claim. Likewise, South Africa's other grounds for dismissal or summary judgment will not be reached.

- 7 -

(citation omitted).  "In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction, the Court may either consider the complaint alone, or the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Best v. United States, Civil Action No. 07-007 (PLF), 2007 WL 4226398, at *1 (D.D.C. Dec. 3, 2007) (quotations and citation omitted).  "The Court must accept all of the factual allegations in the complaint as true, but may, in appropriate cases, consider certain materials outside the pleadings."  Id. (citing Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005)).  Although the complaint is to be liberally construed, the court need not accept factual inferences drawn by the plaintiffs if those inferences are not supported by facts alleged in the complaint.  Nor must the court accept plaintiffs' legal conclusions.  See id. (citing Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003)).

The Foreign Sovereign Immunity Act ("FSIA") is "the sole basis for obtaining jurisdiction over a foreign state[.]" Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989).  "[A] foreign state is presumptively immune from the jurisdiction of United States courts" unless one of the statutory exceptions applies.  Saudi Arabia v. Nelson, 507 U.S. 349, 355, (1993) (citing Verlinden B.V. v. Central Bank of Nigeria, 461

- 8 -

U.S. 480, 488-89 (1983)).  South Africa asserts its presumptive right to immunity under the FSIA.  In response, the plaintiffs claim that the acts of Stander, Van Rooyen, Oceantec, and Intercol satisfy at least one of the statutory exceptions to defendant's immunity and are attributable to South Africa.

I.   ATTRIBUTING ACTS OF OCEANTEC AND INTERCOL TO SOUTH AFRICA

"[G]overnment instrumentalities established as separate juridical entities distinct and independent from their sovereign should normally be treated as such."  First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 626-27 (1983) ("Bancec").  This presumption will be overcome "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," and when recognizing the entity's separate legal status "would work fraud or injustice."  Id. at 629 (citations omitted); Transamerica Leasing, Inc. v. La Republica De Venezuela, 200 F.3d 843, 848 (D.C. Cir. 2000).  "The presumption of the juridical separateness of entities also applies to jurisdictional issues."  Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 446 (D.C. Cir. 1990).  "It is further clear that the *Plaintiff* bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship."  Id. at 447 (emphasis in original).  When the complaint rests on conclusory allegations, "the plaintiff must provide further proof of

government involvement in order to overcome the presumption of juridical separateness." Foremost-McKesson, Inc., 905 F.2d at 448. The determination of whether an agency relationship exists is fact-based. Id. at 449 (citing Gilson v. Republic of Ireland, 682 F.2d 1022, 1029 (D.C. Cir. 1982)).

   A.   Agency exception

Two distinct circumstances overcome the presumption of an entity's independence from its sovereign and establish instead an agency relationship: (1) control of the entity by the foreign sovereign, and (2) the existence of apparent authority.[5] See Transamerica Leasing, Inc., 200 F.3d at 848.

A sovereign's control over a separate entity may justify holding the sovereign responsible for the actions of the entity under two circumstances. Id. "First, control is relevant when it significantly exceeds the normal supervisory control exercised by any corporate parent over its subsidiary and, indeed, amounts to complete domination of the subsidiary." Id. When the distinction between the sovereign and the entity becomes meaningless and the two act as one, the sovereign will be held

---

[5] A sovereign's responsibility may be established where the plaintiff can show that an entity was cloaked in a sovereign's apparent authority and "that [the plaintiff] reasonably relied upon a manifestation by the sovereign to that effect." Transamerica Leasing, Inc., 200 F.3d at 850. However, plaintiffs do not rely upon this principle. They maintain that South Africa concealed its involvement in the alleged transactions and that they did not become aware of the sovereign's involvement until much later.

liable for the actions of the entity.  Id.  "Second, control is relevant when the sovereign exercises its control in such a way as to make the instrumentality its agent[.]"  Id. at 849.  At minimum, in order to establish a principal-agent relationship, "the parent [must have] manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary [must have] consented so to act, the parent [must have] the right to exercise its control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments of the subsidiary's Board of Directors."  Id.

    1.   Domination

South Africa maintains that it has exerted no control over Oceantec and Intercol and nothing in the record, nor plaintiffs' allegations, overcomes the presumption that the corporations are independent entities.  The relationship between South Africa and Oceantec and Intercol is more attenuated than those in Transamerica Leasing and Foremost-McKesson.  There is no evidence that the defendant held any stock in the corporations, unlike in Transamerica Leasing, nor does the record prove that it had any influence in the appointment of officers, as in Foremost-McKesson.

- 11 -

Further, while plaintiffs rely on several documents to establish South Africa's liability,[6] not one of those documents reveals that South Africa exerted the necessary domination to hold it responsible for the corporations' actions.  Two of the documents, the Report and Stander's Answer, fail to allege any link between South Africa and the corporations as no mention was made of any domination by South Africa over the corporations.  The main document relied upon by plaintiffs, the Goslar deposition, does not establish the requisite domination by South Africa over Oceantec and Intercol.  Although Goslar states that Stander and Van Rooyen admitted to him that Oceantec and Intercol were "front companies" for the South African government (see Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n") Ex. 1 at 30), Goslar could not state with any certainty who controlled the companies and to what degree.  (Id. at 30, 31, 38, 43.)  Moreover, plaintiffs have not offered any affidavits, sworn testimony, or sworn declarations of Stander or Van Rooyen affirming Goslar's hearsay assertion.  In addition, Stander's Request for Release, also relied on by plaintiffs, makes no mention of Oceantec and refers to Intercol only once.  Although the document describes Stander's role in a project involving financial transactions designed to avoid international sanctions

---

[6] Plaintiffs rely on the Report, Stander's Answer in the prior lawsuit, Goslar's deposition and affidavit, and Stander's "Request for Release."

- 12 -

imposed on the apartheid regime (see Def.'s Mot. to Dismiss Ex. B at 212-213), this information falls far short of showing that South Africa defrauded plaintiffs through Oceantec and Intercol. While the Goslar deposition and Stander's Request for Release may raise suspicions, they are insufficient to demonstrate that South Africa dominated Oceantec and Intercol in a manner that would warrant holding South Africa responsible for the corporations' actions.

    2.   Principal-agent relationship

There is scant evidence, if any, that South Africa manifested its desire for the corporate defendants to act on its behalf or that it had any power to control the actions of the corporate defendants.  The Report and Stander's Answer do not even refer to Oceantec and Intercol in relation to the defendant, and the Goslar deposition and Stander Request for Release offer little more proof of South Africa's involvement with the corporations.  In his deposition, Goslar never stated with certainty that South Africa wanted the entities to act on its behalf or that the entities were actually acting on the sovereign's behalf.  Stander's Request for Release also failed to establish that the entities operated at the behest of South Africa; rather, it dealt with matters of a largely different nature from those alleged by the plaintiffs.  When taken together, the documents fail to provide that South Africa

manifested its desire for the corporate defendants to act on its behalf, benefitted from the corporate defendants' actions, or had any real control over the corporate defendants' actions.  The facts pled in this case fall well short of the minimum showing required to establish agency liability that is set forth in Transamerica Leasing.  Plaintiffs have not shown that South Africa exerted the requisite control to create a principal-agent relationship between the corporate defendants and itself.[7]

    B.   Fraud or injustice

A court may refuse to recognize the separate juridical status of certain government instrumentalities or entities when that recognition would work a fraud or injustice.  See Bancec, 462 U.S. at 632.  In Bancec, the Court found that "to adhere blindly to the corporate form . . . would cause such an injustice" because it was clear that the sovereign was benefitting from the fraud and injustice.  By contrast, the record here is devoid of any evidence that South Africa

---

[7] Even if plaintiffs did plead facts showing a principal-agent relationship between the corporate defendants and South Africa, plaintiffs have failed to show that Oceantec and Intercol were acting within the scope of their authority with respect to the plaintiffs.  As is explained in Transamerica Leasing, "[t]hat a state and a state-owned corporation may in some circumstances be, respectively, principal and agent does not necessarily mean, however, that in those circumstances the sovereign is amenable to suit based upon the acts of the agent. . . . [J]urisdiction over the sovereign cannot be maintained if the agent's actions are not related to the substance of the plaintiff's cause of action." 200 F.3d at 850 (internal quotations and citation omitted).

- 14 -

benefitted at all from the alleged transactions involving plaintiffs.  As is explained above, two of the documents relied upon by plaintiffs make no mention of South Africa's involvement and the other two documents offer no evidence that South Africa benefitted from the alleged transaction.[8]  While plaintiffs also make an unsubstantiated claim that South African police have proof that Stander and Van Rooyen are in possession of large sums of money matching the amounts allegedly owed to plaintiffs, this would tend to show, if anything, that Stander and Van Rooyen, not South Africa, benefitted from the transactions.  Plaintiffs have failed to allege or demonstrate any benefit at all to South Africa from the alleged fraud that would warrant disregarding the separate status of the entities in this suit.

II.  ATTRIBUTING ACTS OF STANDER AND VAN ROOYEN TO SOUTH AFRICA

Foreign sovereigns can be held liable for the actions of an individual if that individual acts in an official capacity and if that behavior fits within one of the FSIA's exceptions to immunity.  Velasco v. Gov't of Indonesia, 370 F.3d 392, 398-99 (4th Cir. 2004) (citing Phaneuf v. Republic of Indonesia, 106

---

[8] Stander's Request for Release never mentioned the transactions anywhere and only briefly spoke of any financial transactions in the most abstract manner.  While Goslar's deposition did discuss financial transactions, it was only in the broadest of terms and failed to mention the plaintiffs' alleged transactions specifically.  Further, Goslar could not state with any certainty at whose behest these transactions were being carried out.

F.3d 302, 306 (9th Cir. 1997); First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission, 877 F.2d 189, 194-96 (2d Cir. 1989)).  Some circuits have held that the agent must have acted with actual authority, while others have held that the agent can have acted with either apparent or actual authority.[9]  Velasco, 370 F.3d at 399-400.

Plaintiffs have shown neither actual nor apparent authority here.[10]  No facts pled or established link Stander and Van Rooyen to the South African government sufficiently for purposes of holding South Africa responsible for those individuals' actions involving plaintiffs.  The Report and Stander's Answer hardly mention South Africa and do not amply demonstrate an agency relationship between South Africa and these individuals.  As is discussed above, the Report does not mention South Africa and Stander's Answer admits only that he used to be an officer in the South African Security Police.  (See Pls.' Opp'n Ex. 3 at ¶ 25.)

---

[9] In concurring with the Ninth Circuit, the Velasco court concluded that for an exception to be invoked against a foreign sovereign, its officials must have acted with actual authority. Velasco, 370 F.3d at 400.

[10] Again, plaintiffs do not rely upon an apparent authority theory.  "Apparent authority may be defined as the 'power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.'"  Makins v. District of Columbia, 277 F.3d 544, 549 (D.C. Cir. 2002) (quoting Restatement (Second) of Agency § 8 (1985)).  Plaintiffs have maintained that they did not know, and could not have known, that Stander and Van Rooyen worked for South Africa.

- 16 -

The other two documents relied upon by plaintiffs -- Goslar's deposition and Stander's Request for Release -- do not prove the existence of an agency relationship whereby Stander and Van Rooyen acted under the authority of the defendant.  In his wide-ranging deposition, Goslar never stated with any certainty for who whom, if anyone, Stander and Van Rooyen worked.  When questioned about specific deals, he could only "presume" that Stander and Van Rooyen acted at the behest of South Africa.  (See Pls.' Opp'n Ex. 1 at 30, 31, 38, 43.)  Stander's Request for Release dealt with matters largely unrelated to this litigation.  Although he did claim to have been working for certain members of the intelligence community combating anti-apartheid activities (see, e.g., Def.'s Mot. to Dismiss Ex. B, Request for Release at 212, 213, 215, 221, 222), his participation in the transactions alleged here and in the previous litigation would be far outside the scope of any agency relationship that the Request for Release could arguably show.

## CONCLUSION

The court does not have subject matter jurisdiction under the FSIA over plaintiffs' claims against South Africa.  The FSIA is the only basis for obtaining jurisdiction over a foreign sovereign and plaintiffs have not overcome South Africa's presumptive immunity from suit.  Plaintiffs have failed to show that the acts of either the corporations or Stander and Van

- 17 -

Rooyen should be attributed to South Africa.  Accordingly, South Africa's motion to dismiss will be granted.  A separate order accompanies this memorandum opinion.

SIGNED this 31st day of December, 2007.


_____/s/_____
RICHARD W. ROBERTS
United States District Court